**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-00126-CMA-CBS

ALICE HAWKINS,

    Plaintiff,

v.

COUNTY OF BENT, COLORADO,
   d/b/a BENT COUNTY HEALTHCARE CENTER, and
BARBARA MARTIN, individually and in her capacity as Administrator
   of Bent County Healthcare Center,

    Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on Defendants' Motion to Dismiss (Doc. # 9), filed on February 24, 2011. This is a civil rights case. Plaintiff Alice Hawkins alleges that Defendants County of Bent, Colorado, and Barbara Martin violated rights granted to her by the Omnibus Budget Reconciliation Act of 1987 ("OBRA'87"), which included the Federal Nursing Homes Reform Amendments (hereinafter, "FNHRA"). Specifically, Plaintiff alleges that Defendants failed to follow a reasonable care plan in regard to the treatment of Plaintiff's pressure sore, to accurately assess the condition of the pressure sore, to involve a physician and a wound care specialist with her treatment, to relieve pressure and control pain from the sore, and to provide adequate nutrition and hydration. (Doc. # 1.) Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

### A. FACTS

Plaintiff was admitted to Parkview Medical Center on April 27, 2010, for repair of a fractured hip and for rehabilitation. During her stay at Parkview Medical Center, Plaintiff developed a pressure sore on her sacral area. On May 3, 2010, Plaintiff was transferred from Parkview Medical Center to Bent County Healthcare Center for further rehabilitation. Plaintiff alleges that prior to being transferred to Bent County Healthcare Center, a Bent County nurse performed a head-to-toe examination of Plaintiff, revealing the pressure sore and putting Defendants on notice of the sore. Plaintiff further alleges that throughout the duration of her stay at Bent County Healthcare Center, the pressure sore was not monitored, Defendants failed to inform her physician of her condition, and she was not provided with adequate nutrition and hydration. On May 17, 2010, Plaintiff was discharged from Bent County Healthcare Center. At the time of her release, Plaintiff's family brought Plaintiff to her family physician, Dr. Richard Book. Upon examining the pressure sore, Dr. Book ordered the admission of Plaintiff to the hospital where she underwent surgical treatment of the pressure sore, including the removal of her tailbone.

### B. PROCEDURAL HISTORY

On January 18, 2011, Plaintiff filed a Complaint in this Court alleging that Defendants violated her rights by failing to satisfy the standards of quality of care and resident rights set forth in 42 U.S.C. §§ 1395i-3 and 1396r. (Doc. # 1.)

On February 24, 2011, Defendants filed a Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the FNHRA does not confer a private right enforceable under 42 U.S.C. § 1983.  (Doc. # 9.)  Alternatively, Defendants claim that they are entitled to qualified immunity because Plaintiff is unable to establish that Defendants' alleged actions violated a statutory right that was clearly established at the time of Defendants' unlawful conduct.  (Doc. # 9.)  On March 16, 2011, Plaintiff responded.  (Doc. # 11.)  On March 30, 2011, Defendants replied.  (Doc. # 13.)  These matters are fully briefed and ripe for review.

## II.  STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion to dismiss, a court "accept[s] all the well-pleaded allegations of the complaint as true" and "construe[s] them in the light most favorable to the plaintiff."  *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007)).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that" the alleged claim might have occurred.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (citation and quotation marks omitted).  "[T]he complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

In evaluating the plausibility of a given claim, the Court "need not accept conclusory allegations" without supporting factual averments.  *S. Disposal, Inc. v. Tex.*

*Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S.Ct. at 1949.

In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180 (10th Cir. 2007).  Courts may also consider documents attached as exhibits to the complaint.  *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

### III.  ANALYSIS

Defendants seek dismissal of Plaintiff's claim on the grounds that Plaintiff has failed to state a claim for which relief can be granted because the FNHRA and its implementing regulations do not create a private right enforceable under 42 U.S.C. § 1983 ("§ 1983").  Alternatively, Defendants argue that, if the Court finds that the FNHRA does confer an enforceable private right, they are nevertheless entitled to qualified immunity because Plaintiff cannot show that Defendants' alleged actions violated a statutory right that was clearly established at the time of Defendants' unlawful conduct.

### A. FNHRA PRIVATE RIGHT OF ACTION

Defendants argue that Plaintiff fails to state a claim for which relief can be granted because the FNHRA and its implementing regulations do not create a private right enforceable through a § 1983 action. Plaintiff responds that the FNHRA confers an enforceable individual right because she is an intended beneficiary of the FNHRA and the words of the statute show that Congress unambiguously intended to confer a right.

Pursuant to § 1983, an individual may obtain relief for a violation of a federal statutory or constitutional right against anyone who, under color of state law, deprives that individual of such right. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). In order to state a claim for relief under § 1983, Plaintiff bears the burden of establishing that the FNHRA confers upon her an individual federal **right**, *i.e.*, it is not enough to show that Defendants have violated the FNHRA. *See id.* at 342. In *Blessing*, the Supreme Court developed a three-part test for determining whether a statute confers an individual federal right:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right allegedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms.

*Id.* at 340-41. The Supreme Court further revised the first factor of the *Blessing* test to require a showing that Congress unambiguously intended to confer a private right upon

the statute's beneficiaries. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002).  Although the Tenth Circuit has not yet decided whether the FNHRA unambiguously confers individual rights, it has given direction to this court that: "[a]fter *Gonzaga*, an enforceable private right exists only if the statute contains nothing 'short of an unambiguously conferred right' and not merely a vague benefit or interest."  *Mandy R., ex rel. Mr. and Mrs. R. v. Owens*, 464 F.3d 1139, 1147 (10th Cir. 2006).

For the reasons set forth herein, the Court finds that the FNHRA does not unambiguously create a private right enforceable through a § 1983 action.

    1.    <u>*Blessing* Factor One, as Altered by *Gonzaga*</u>: Congressional Intent

In order to determine whether Congress, in passing the FNHRA, unambiguously intended to confer an individual federal right enforceable under 42 U.S.C. § 1983, the Court must examine both the plain language and the enforcement scheme of the FNHRA to determine whether the statute is sufficiently "rights-creating."  *See Gonzaga,* 536 U.S. at 286.

        a)    *Plain Language of the FNHRA*

The inquiry of the Court today is whether Congress unambiguously intended to confer an enforceable right, not just a benefit, on nursing home residents under the FNHRA.  There is no question that nursing facility residents receive a benefit that naturally flows from the requirement that nursing facilities comply with the FNHRA (which they must do in order to receive Medicaid and Medicare funding).  However, merely because Congress intended to **benefit** nursing home residents through the

FNHRA regulations does not mean that Congress intended to bestow an **individual enforceable right** upon them.  It is only the "rights not the broader or vague 'benefits' or 'interest,' that may be enforced under the authority of [§ 1983]." *Gonzaga,* 536 U.S. at 283.  Even when a statute speaks in terms of rights, there is no presumption of enforceability.  *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 18-20 (1981).  As such, Congress's intent to confer **rights**, and not just **benefits***,* must be unambiguous*.*

In order to determine whether Congress unambiguously intended to confer an **enforceable private right**, the language of the statute must be "phrased in terms of the persons benefitted," not the persons regulated.  *Gonzaga*, 536 U.S. at 284 (citing *Cannon v. Univ. of Chi.*, 441 U.S. 677, 692 (1979)).  In *Gonzaga*, the Supreme Court held that the language of Title VII of the Civil Rights Act of 1964 (hereinafter, "Title VII") and Title IX of the Education Amendments of 1972 (hereinafter, "Title IX") unambiguously confers a private right upon the benefitted class because the language demonstrates an unmistakable focus on the benefitted class: "[n]o person . . . shall . . . be subjected to discrimination."  *Gonzaga,* 536 U.S. at 284.  Although the FNHRA refers to the members of the benefitted class (*i.e.,* residents), unlike Title VII and Title IX, the FNHRA is phrased in terms of the regulated class, not the benefitted class.  In other words, in Title VII and Title IX the benefitted classes are the grammatical subjects of the rights clauses, whereas in the FNHRA the grammatical subject of the provisions is the regulated class (i.e. the nursing home facilities).  The provisions of the

FNHRA are phrased as "nursing facilities must . . . ."  *See, e.g.,* 42 U.S.C. § 1395i-3(b) ("requirements for . . . skilled nursing facilities"); 42 U.S.C. § 1395i-3(b)(2) ("skilled nursing facilities must provide . . ."); 42 U.S.C. § 1395i-3(b)(1)(B) ("a skilled nursing facility must maintain . . .").  The FNHRA provisions focus on what state nursing facilities must do to maintain funding, not on the benefits received by the residents.[1] *See Duncan v. Johnson-Mathers Health Care, Inc.* No. 09-CV-417, 2010 WL 3000718, at *8 (E.D. Ky. 2010) (unpublished) (although "the FNHRA clearly speaks of the rights of nursing home residents, the focus of the statute is on setting forth requirements that nursing homes must follow to maintain their certifications and eligibility for federal funding.").

Under *Gonzaga,* Congress's intent is ambiguous when a provision focuses on the persons regulated (*i.e.,* the nursing homes), not the persons benefitted (*i.e.,* the nursing home patients), as in this case. Therefore, this Court cannot presume Congress intended to create enforceable rights as the Supreme Court did in regard to Title VII and Title IX.[2]

---

[1] This interpretation of the FNHRA's focus is consistent with the legislative history, which indicates that Congress "was troubled that the Federal government, through the Medicaid program, continues to pay nursing facilities for providing poor quality care to vulnerable elderly and disabled beneficiaries." H.R. Rep. 100-391(I), at 452 (1987). The legislative history demonstrates that Congress was focused on the use of Medicaid funding, not on the creation of individual rights.

[2] Although the Supreme Court in *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498 (1990), held that a provision of Title XIX of the Social Security Act using similar language to that of the FNHRA conferred an individual right of action, *Wilder* was decided before *Gonzaga* and applied a different standard than the one used today.  Thus, *Wilder* is not controlling.

This Court is aware that in *Grammar v. John J. Kane Regional Centers-Glenn Hazel,* 570 F.3d 520, 529 (3d Cir. 2009), the Third Circuit found that, because the FNHRA is "replete with rights-creating language," the FNHRA creates an enforceable individual right. This Court, however, believes that the Third Circuit's decision in *Grammar* is inconsistent with the strict tests set forth by the Supreme Court in *Gonzaga*, 536 U.S. at 283 (requiring that the text have an unmistakable focus on the benefitted class) and *Pennhurst*, 451 U.S. at 18-20 (finding no presumption of individual federal rights simply because the statute speaks in terms of rights). The Third Circuit in *Grammar* asserted that it was "not concerned that the provisions relied upon by the [a]ppellant are phrased in terms of responsibilities imposed on the state or the nursing home." 570 F.3d at 529. However, the phrasing of the statute is exactly what the Supreme Court meant courts to be concerned with when it asserted that "for a statute to create such private rights, its text must be 'phrased in terms of persons benefitted.'" *Gonzaga*, 536 U.S. at 284 (citing *Cannon*, 441 U.S. at 692). As noted in the above discussion, the FNHRA is phrased in terms of responsibilities imposed on the state. This Court believes that the *Grammar* court incorrectly disregarded the standard set forth by the Supreme Court when it concluded that the FNHRA was phrased in terms of person's benefitted because of the "use of the word 'residents' throughout." *Grammar*, 570 F.3d at 529.[3]

---

[3] For these same reasons, the Court does not find persuasive the decisions of the First, Fourth, Fifth, and Ninth Circuits which have held that Medicaid provisions confer enforceable individual rights. *See Doe v. Kidd*, 501 F.3d 348, 365 (4th Cir. 2007); *Watson v. Weeks*, 436 F.3d 1152, 1155 (9th Cir. 2006); *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 603 (5th Cir. 2004); *Bryson v. Shumway*, 308 F.3d 79, 88-89 (1st Cir. 2002).

      *b)*  *Enforcement Provisions*

Although the plain language of the FNHRA provisions cited in Plaintiff's Complaint does not unambiguously confer a private right, the Court's analysis is not yet complete. "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Pennhurst,* 451 U.S. at 19 (internal quotation and citations omitted).

The Court finds that the statute, as a whole, does not indicate that Congress unambiguously conferred a private right.[4] Although 42 U.S.C. §§ 1395i-3 and 1396r do not contain provisions expressly precluding individual actions, the FNHRA, taken as a whole, indicates that Congress did not consider creating a private right of action. Although, as indicated above, the provisions of the FNHRA do confer a **benefit** on residents, the enforcement provisions demonstrate that Congress intended that the FNHRA was to be enforced only by the Secretary of Health and Human Services ("Secretary) and the State, not through individual actions under a federal statute. Through the FNHRA, Congress bolstered the enforcement methods available to the Secretary by providing the Secretary with a great number of sanctions and tools to "bring substandard facilities into compliance with Medicaid quality of care requirements

---

[4] The Court is aware that most other courts have first determined that the plain language of a provision unambiguously confers an enforceable private right, after which they have separately analyzed the enforcement provision only to see if the enforcement scheme is so comprehensive that it demonstrates that Congress intended to preclude private rights of action. The Court, however, is viewing the provisions cited in Plaintiff's complaint in light of the enforcement provisions in order to clarify an already ambiguous intent, not to demonstrate that Congress intended to preclude a private right despite unambiguous plain language.

or to exclude them from the program." H.R. Rep. No. 100-391(I), at 452 (1987). Congress's purpose was to strengthen the methods of enforcement available to the Secretary, not to provide individuals with enforceable rights. If Congress had intended to create an enforceable individual right, Congress could have easily included a provision affirmatively granting individuals a right of enforcement as it did for the Secretary and the State.

Furthermore, Congress provided two other avenues through which individuals may seek remedies. First, Congress expressly indicated that the enforcement scheme in no way precludes individuals from bringing actions at common law. 42 U.S.C. § 1396r(h)(8). Second, the legislative history, combined with a provision within the FNHRA, indicate that Congress intended individual residents to file complaints with the Secretary instead of bringing individual actions. The legislative history states that "[r]emedies may be invoked on the basis of findings made by either the Secretary or the States . . . from investigations of complaints from residents or families." H.R. Rep. 100-391(I), at 472. Additionally, the FNHRA requires nursing facilities to provide notice to residents that they "may file a complaint with a State survey and certification agency respecting resident abuse and neglect and misappropriation of resident property in the facility." 42 U.S.C. § 1396r(c)(1)(B)(iv). Complaints are intended to enable the Secretary to assess the level of deficiency of care provided by a nursing facility or to initiate a survey of the nursing facility. The aforementioned provision distinguishes this case from *Wright v. City of Roanoke Redevelopment and Housing Authority,* 479 U.S.

418, 426 (1987), in which the Supreme Court found that Congress intended to confer a private right under the Brooke Amendment to the Housing Act of 1937 because there was no "procedure by which tenants could complain to [the governing federal agency] about the alleged failures [of state welfare agencies]." In *Wright*, individuals would be without a remedy or would be without a method for filing grievances if the provisions did not confer an enforceable federal right.  When Congress fails to ensure that individuals will be able to seek a remedy through at least one avenue, Congress's intent to create an enforceable right is clearer because there is a need for individual redress.  *See Baum v. N. Dutchess Hosp.*, No. 10-CV-424, 2011 WL 240196, at *10 (N.D.N.Y Jan. 24, 2011) (unpublished).  Here, unlike in *Wright*, Congress provided a mechanism for residents to enforce any legal rights: Residents may complain to the Secretary and the State or file an action under common law if a nursing facility fails to comply with the FNHRA.  42 U.S.C. § 1396r(c)(1)(B)(iv).  Because residents have other avenues of redress, there was no need for Congress to create an enforceable right.

Considering not only the plain language itself but also the provisions cited in Plaintiff's Complaint in the context of the FNHRA as a whole, it is apparent that Congress did not unambiguously intend to confer an enforceable private right on Plaintiff.[5]

---

[5] Nothing in this order precludes Plaintiff from filing a claim against Defendants under common law theories.

In light of this finding, the Court need not address the second two factors of the *Blessing* test.  Additionally, because Plaintiff has failed to state a claim for which relief may be granted, the Court need not decide whether Defendants are entitled to qualified immunity.

### IV.  CONCLUSION

Accordingly, IT IS ORDERED THAT:

1. Defendant's Motion to Dismiss (Doc. # 9) is GRANTED; and

2. Plaintiff's statutory claim is DISMISSED WITH PREJUDICE ; and

3. This case is DISMISSED.

DATED:  July   06  , 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge